# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

SPORT HELMETS INC.,

        Plaintiff,

    v.

NEW BALANCE ATHLETIC SHOE,
INC. and WARRIOR SPORTS, INC.,

        Defendants.

Civil Action No. _____

## COMPLAINT

    1.    This case concerns infringement of the distinctive and famous trade dress for

a lacrosse helmet known as the CPX model ("CPX") owned by Plaintiff, Sport Helmets

Inc. d/b/a Cascade ("Cascade").




Cascade "CPX"                    Warrior "TROJAN"

2.    In 2004, Defendant, New Balance Athletic Shoe, Inc. ("New Balance") acquired Warrior Sports, Inc. ("Warrior") of Warren, Michigan.    Warrior is a wholly owned subsidiary of New Balance.

3.    Recently, Warrior began advertising, promoting, and offering for sale a lacrosse helmet named the "TROJAN" helmet.    On information and belief, Warrior began shipping TROJAN helmets at least as early as January 28, 2010.    The Warrior TROJAN helmet is virtually identical to Cascade's CPX helmet and copies virtually every minute feature of the CPX helmet.    This is fully evident from a side-by-side comparison of the CPX and TROJAN helmets as shown above.

4.    As set forth more fully below, Cascade's CPX helmet is an iconic helmet that embodies the Cascade brand identity and its core values of quality, safety, aesthetic beauty and fit.    The primary purpose and impact of the overall look of the CPX helmet is to identify Cascade as the source of these helmets.

5.    Since Cascade first introduced the CPX helmet into the marketplace in late 2003, it has actively advertised and promoted the CPX helmet in print advertising as well as on its extremely popular website.    As a result, the CPX helmet has become one of the most popular helmets worn by high school and college athletes nationwide.    Its numerous aesthetic features constitute the trade dress of the CPX helmet and identify Cascade as its source, as more fully explained below.

6.    Warrior's use of a virtually identical trade dress for its TROJAN helmet is bound to cause confusion as to the source of Warrior's product.    Customers and potential customers will erroneously believe that Warrior's TROJAN helmet emanates from, or is licensed or approved by Cascade.    Any dissatisfaction with the TROJAN

helmet will reflect upon and irreparably damage the reputation and goodwill of Cascade as embodied in the distinctive trade dress of its CPX helmet.   In fact, even before a single TROJAN helmet had been sold, evidence of such confusion as to source has pervaded the Internet, as described in greater detail below.

7.   Cascade never authorized or licensed New Balance or Warrior to use its famous and distinctive trade dress.

8.   New Balance's conduct constitutes federal trademark infringement (15 U.S.C. § 1125(a)) and dilution (15 U.S.C. § 1125(c)), trademark infringement and dilution under the laws of the Commonwealth of Massachusetts, and Statutory Unfair Competition under Mass. Gen. L. Ch. 93A.

## PARTIES

9.   Sport Helmets Inc. is a corporation of Delaware having its principal place of business at 4635 Crossroads Park Drive, Liverpool, New York 13088.

10.   New Balance Athletic Shoe, Inc. (New Balance) is a Massachusetts corporation with its principal place of business at 20 Guest Street, Boston, Massachusetts 02135-2088.

11.   Warrior Sports, Inc. (Warrior) is a Michigan corporation with its principal place of business at 32125 Hollingsworth Avenue, Warren, Michigan 48092.

## JURISDICTION AND VENUE

12.   This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.   There is complete diversity of the parties, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where New Balance resides (New Balance owns Warrior), where Warrior operates a retail store, and where they are both subject to personal jurisdiction.    Additionally, on information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## FACTS

14.     Cascade is a private company that was founded in 1986.    Today, Cascade is the dominant force in the field of lacrosse helmets, holding approximately an 80% market share in that field despite aggressive competition from numerous competitors, including New Balance and Warrior.

15.     Since its inception, Cascade has been focused on developing the highest quality headgear and head protection products for sports including lacrosse and hockey. Its lacrosse helmets have long been recognized as the best in the industry due to their innovations in impact attenuation, comfort, and style.

16.     Cascade designs, tests, and manufactures all of its products in the USA. Assembly, quality assurance, and distribution are based at its headquarters in Liverpool, New York, while research and development takes place in Mansfield, Massachusetts.

17.     Cascade's CPX helmet evolved early in the decade of the 2000s and was offered to the purchasing public in late 2003.    As part of the evolution of Cascade's brand, the CPX helmet includes numerous aspects of non-functional design elements that identify Cascade as the source of the CPX helmet.    That famous and distinctive "Cascade Trade Dress," which is clearly visible in its variety of forms from any angle at which one may view the CPX helmet, is comprised of the following design elements: the

arrangement of nine top vent holes and recesses surrounding them, a visor (the appearance of which dates from the Cpro helmet), a face guard including an undulating bar, a chin guard including distinctive and ornamental openings; a recessed area curving around the rear of the helmet (on Cascade helmets since 1996) and ear holes consisting of two vertically stacked horizontally elongated generally rectangular openings (on Cascade helmets since 1996). Cascade's CPX and Pro 7 helmets include the same overall non-functional design elements as its predecessor products, CLH, CLH2, C2 and Cpro helmets. In fact these design elements, comprising the Cascade Trade Dress, were specifically chosen to reflect the heritage of these predecessor products dating back to 1996.

18.     In particular, from the front of the CPX helmet one may clearly see the combination of top vent holes and recesses surrounding them, the distinctive visor, an undulating bar of a face guard, and a chin guard including vent openings.



19.     From the top of the CPX helmet, clearly visible are the nine top vent holes and recesses surrounding them, along with a visor.



20.    From the rear of the CPX helmet, one may see the top vent holes and recesses surrounding them and a recessed area curving around the rear of the helmet.



21.    From either side of the CPX helmet, one may see various aesthetic design features, including top vent holes and recesses surrounding them, a visor, a face guard

including an undulating bar, a chin guard including ornamental openings, and ear holes consisting of two vertically stacked, horizontally elongated, generally rectangular openings, as well as a recessed area curving around the rear of the helmet.



22.    Cascade is continually working to improve and enhance its line of lacrosse helmets, including by the incorporation of features that enhance the safety, comfort, protection and aesthetics of its helmets as they evolve.    In October 2007, Cascade introduced its new Pro-7 lacrosse helmet.    While the Pro-7 helmet includes several new design features, it also incorporates core elements of the Cascade Trade Dress, including the nine vent hole top configuration, vertically stacked horizontally elongated ear holes, chin guard with vent holes, undulating face guard bars, and a rear recessed area. Various combinations of these non-functional features, depending upon the direction of viewing, identify Cascade as the source.    A photo of the Pro-7 helmet is shown below:



23.    Major League Lacrosse (MLL) is a league of professional lacrosse teams that play lacrosse outdoors. Since the league's inception in 1999, Cascade has been the exclusive helmet supplier to MLL.   Every professional field lacrosse player in the last 10 years has worn a Pro7, CPX or predecessor Cascade helmet.   Cascade has a contract with MLL so that its helmets are the exclusive helmets of Major League Lacrosse.

24.    The CPX and Pro-7 helmets -- each of which embodies the unique and distinctive Cascade Trade Dress -- are the first choice of the best high school, college and professional lacrosse teams playing today.   Out of the top 100 high school teams in the United States, at least 80 use a Cascade CPX or Pro-7 helmet.   Four out of five NCAA Div I men's lacrosse teams use a Cascade CPX or Pro-7 helmet.   As explained above, every MLL team uses the Cascade Pro-7 helmet.   Fourteen of the last 15 NCAA division 1 lacrosse champions have worn CPX, Pro7 or predecessor design Cascade helmets. Sixteen of the top 20 NCAA Div I teams use Cascade helmets.

25.    As a result of the nationwide promotion and sale of the CPX and Pro-7 helmets, the extensive use of those helmets by lacrosse players across the country, and the exposure of the helmets to the hundreds of thousands, if not millions, of fans who view lacrosse games in which the Cascade CPX and Pro-7 helmets are prominently on display, the general public has come to associate the trade dress features comprising the Cascade Trade Dress with the exclusive source of these helmets, Cascade.

26.    One cannot read any magazine covering the field of lacrosse, whether in print or on the Internet, without seeing numerous photographic images of lacrosse players wearing a CPX or Pro-7 helmet.    In January 2010, at the U.S. Lacrosse National Convention held at the Baltimore Convention Center in Baltimore, Maryland, both Cascade and Warrior had extensive promotional booths.    Cascade's booth displayed its lacrosse helmets and eye protection products.    Warrior's booth displayed its clone TROJAN helmet, but one entire wall of the booth was covered with an enlarged photo consisting of an image of Major League lacrosse players wearing Cascade's Pro-7 helmet. [See Exhibit 1]. The Warrior booth looked to be a second Cascade booth.    Its copycat helmets and images of Cascade helmets suggested an affiliation with Cascade that does not exist and has never existed.

27.    Warrior was founded in 1992 and began introducing a series of helmet designs six years later.

28.    In 1998, Warrior offered the Stryke Infinity helmet that was worn by Team USA that year.    Although Team USA won the World Championships, the helmet had limited commercial success..    The Infinity helmet failed to erode Cascade's dominant market share.

29.    In 2002, Warrior introduced the Stryke Pro Z helmet, which had a smoother visor than the Stryke Infinity and included a chin piece that began to resemble Cascade's aesthetic look.    But the Stryke Pro Z had essentially the same helmet shell as the Stryke. The Pro Z helmet failed to erode Cascade's dominant market share.

30.    In 2005, Warrior introduced the Warrior Viking helmet.    The helmet had the same shell as the Stryke Infinity and Stryke Pro Z helmets. The Viking helmet did not affect Cascade's dominant market share.

31.    In 2007, Warrior introduced the Warrior Venom helmet.    The Venom had no adverse impact on Cascade's market share.

32.    In 2008, Warrior introduced the Warrior Diablo helmet, which has the same shell as the Warrior Venom helmet. The Diablo has not met with commercial success.

33.    In January 2010, Warrior introduced into the marketplace its clone TROJAN helmet.    On information and belief, faced with its utter inability to create its own successful design for lacrosse helmets, Warrior chose to copy Cascade's innovative, distinctive, and well-known Cascade Trade Dress features in order to compete with Cascade, in direct violation of the laws of trade dress infringement, dilution, and unfair competition.    One interesting aspect of Warrior's knock-off TROJAN helmet is the fact that 5 out of 6 earlier Warrior helmets had, as a source identifier, 3 horizontal ear holes. In cloning Cascade's CPX helmet, Warrior has abandoned its own trade dress in favor of copying Cascade's.

34.    It is beyond dispute that the Cascade Trade Dress as incorporated in Cascade's CPX helmet has acquired distinctiveness, given its promotion and sale for more than six years and its dominance in the market.    First, the CPX helmet and the Pro-

7 helmet which evolved from it are used by over 80% of the top 100 high school and

college lacrosse teams, as well as by every major league lacrosse team.    Consequently,

hundreds of thousands, if not millions, of lacrosse fans have seen that helmet on the

playing field for a dozen years with the Cascade Trade Dress clearly visible, and they

associate that trade dress with the company they know to be the source of the helmets,

Cascade.    Second, Cascade's active promotion of its helmets on its website at

www.cascadesports.com has enhanced the role of the Cascade Trade Dress as a source

identifier.    Third, images of the CPX and Pro-7 helmets in numerous printed

publications have strengthened the source identification of Cascade Trade Dress.

Fourth, the acquired distinctiveness of the Cascade Trade Dress is demonstrated by

Warrior's blatant attempt to counterfeit the CPX design.

35.    Advertising copy for the TROJAN lacrosse helmet, on information and

belief supplied by Warrior, underscores of the notoriety of the Cascade Trade Dress. [See

Exhibit 2 hereto] The advertisements say the following about its TROJAN helmet:

"Don't be fooled by its traditional appearance, the Trojan brings a ridiculous level of

comfort over your head while providing protection no matter how intense the action."

On information and belief, in light of the near identity of the CPX and TROJAN helmets

and the popularity of Cascade's helmet, "traditional appearance" means the Cascade

Trade Dress.

36.    In an article published on December 10, 2009, at a website accessible at

www.lacrosseplayground.com [Exhibit 3 hereto], David Livingston, Product Manager for

Warrior Sports, described the design process for the TROJAN helmet as follows:    "The

Trojan was made to compete head to head with our competition at the team level, …

When tasked to revamp the helmet category for the company we really took our time to get feedback from all around the country and everyone wanted the same things: improved performance, fit, and price.    From the players to the coaches and the retailers everyone wants a new alternative, but they want something 'better' than they were getting today.    Our task was to make something that fit today's look and to improve the protective system at a better price."    On information and belief, the feedback Warrior got was that many preferred the Cascade CPX helmet, and on information and belief, given the near identity of the CPX and TROJAN helmets and the popularity of the Cascade helmet, the expression "today's look" means the Cascade Trade Dress.    The same article shows a depiction of a TROJAN helmet decorated to be a University of North Carolina helmet.    On information and belief, Warrior knows that the University of North Carolina men's lacrosse team uses a Cascade CPX helmet.

37.    The same article in lacrosseplayground.com includes reader comments that demonstrate the association of the Cascade Trade Dress with Cascade, and the misappropriation of that trade dress by Warrior.    Among those comments are the following:

From a reader named Jesus – "That is a complete rip-off of the CPX.    But as they say, if you can't beat em', join em'."

From "Rico":    "Ask Mr. Livingston where he got the design for that helmet? Also ask him where does Warrior get most of there [sic] designs from???    Other companies ie … Woodrow Shaft – Talon Shaft, Checker Board Arm Pads (Brine) – Nike Cleats (Hopkins).    Helmets Probably CRAP like the rest of there [sic] helmets. Nothing Original from Warrior/Brine.    PRO 7 Best Helmet in the Game Hands down

…………".    From stolendesigns@warrior.com:    "Wow.    I cannot believe that this is

not some sort of infringement on Cascade.    Rip-off.    Pro7 still is the best, and the

original.    Too bad Warrior didn't come up with something original … Warrior continues

to let us down.    I will not use their gear, nor would most players unless mandated by

their team/league (cough cough MLL)."

From Peter:    "So, basically it's a Pro7 with Warrior logos?    That last picture

really shows it, the chin guard is the exact same as the Pro7."

From FiveOh:    "Way to go, Warrior.    'We knew the look we needed to hit so

that took a little tweaking to get things just right, but the look wasn't the hard part.'    Of

course that wasn't the hard part … you took Cascade's CPX, fused the visor to the shell

and slapped on a Warrior logo.    When did Warrior change from an innovative company,

inventing the titanium handle, to today's version of the corporate thief?    If you want to

grow as a company, take the money you spend on your plagiarizing project manager and

throw it to your marketing team.    We all know they could use the help."

From NY laxer:    "WOW disgusting!!! this is a complete rip off of Cascades [sic]

CPX helmet that is possibly the most popular helmet in the game, but of course Warrior

being the unoriginal 'Poster Boy' company of the game, they stole Cascades [sic] genius

helmet design.    Cascade is a helmet company and they do a damn good job at what they

do, Warrior is most certainly not a company that should be making helmets, they have a

different role in the lacrosse industry."

From Prince:    "I HATE warrior [sic], hate hate hate hate.    How did they get

away with this?    Their [sic] thiefs [sic].    Cascade is the king of the helmet.    Denver

looked thing last year, warrior [sic] will possibly ruin their sweet look."

38.   In an article accessible at www.lax.com/lacrosse-equipment/Warrior-Trojan-Lacrosse-Helmets-9753.html, reader comments are also quite telling. [See Exhibit 4]. They include the following:

From ironman505:   "it looks just like the cascade [sic] helmets.   it's a wonna be cascade [sic]."

From steamroller:   "They're copying the cpx which is way better than any other helmet combined.   Don't get this[;] CPX or pro 7 ONLY."

From hopkinfan7:   "if you are going to purches [sic] a helmet, just save yourself the trouble and get a cascade [sic], brine is pushin [sic] it, but they have one nice helmet and that's [sic] it, warrior, is out of the question."

From Rilax69:   "suck it up.   Why would anyone be heated about a new helmet that looks like a cpx and a pro 7?"

From justaphase88:   "this is a mix of a pro 7 and cpx with warrior [sic] logos on it can't believe warrior [sic] is just taking over every company."

From SfeeleyLHS32:   "I hope you guys realize Warrior and Cascade are owned and run by the same people. Brine is also.   So I don't think that there will be any lawsuits."

From Eporederix:   "I'm really disappointed in Warrior.   I know they were desperate for people to buy their stuff because people want equipment that's more protective than flashy and they come back with this?   A direct rip of the CPX.   Really? Really Warrior?"

From slinglax21:   "Maybe Warrior And Cascade Co. designed a helmet together, even though its [sic] a CPX with Warrior emblems and chin strap."

From lax2012:    "I guarantee that cascade [sic] files a lawsuit against warrior [sic].   this [sic] is literally the same thing as a cpx."

From JUSTINtime:    "looks like the pro7 and cpx put together."

Particularly telling are the comments of SfeeleyLHS32 and slinglax21.   These comments demonstrate that the cloning of Cascade's CPX helmet has caused members of the public to believe there is an affiliation between Cascade and Warrior.   No such affiliation exists or has ever existed.

39.   In a similar vein, on an Internet web page accessible at blogs.insidelacrosse.com, reader comments in response to views of the Warrior TROJAN helmet include the following [see Exhibit 5]:

From TheJman:    "So … Did Warrior just by [sic] the design rights to the CPX or does Warrior now own Cascade/SportHelmet?   ** Don't get me wrong, it's MUCH better than the Viking or Venom.   Glad to know that Team USA will have better looking lids."

From Peter:    "Yea I see absolutely no difference in this helmet from the CPX, although I do like the Stanford design with the trees in the vents and on the back."

From M Hizzy:    "… Or did they just blatantly 'borrow' the identical design?   the [sic] Viking and Venom were/are hideous helmets."

From Zack:    "How do they keep getting away with the design rip-offs and the blatant sexual connotations in the names?   It's ridiculous."   From what up?:   "cascade [sic] doesn't have patents on any of their helmets, so warrior [sic] just snaked the design."

From BW:    "I'll stick with my Cascade and stay away from knockoffs!"

From Prince:    " … The helmet is exactly the Same [sic] as the CPX, which is now obsolete that there is the Pro-7, way to go, Warrior, came out with this helmet about 5 or 6 years to [sic] late    Its [sic] a disappointment how lame warrior [sic] has become, they just try to [sic] hard now."

40.    On information and belief, New Balance and Warrior began shipping their Warrior TROJAN helmets on or about January 28, 2010.

41.    Defendants' use of a helmet design that is virtually identical to the distinctive and well-known Cascade Trade Dress will cause confusion, mistake, and deception as to the source of Defendants' products, to the irreparable harm and detriment of Cascade and the substantial goodwill it has developed in its Cascade Trade Dress.

42.    New Balance is well aware of the importance of protecting a company's trade dress.    In this very Court, New Balance sued companies affiliated with the Louis Vuitton brand for alleged infringement of New Balance's trade dress in its 574 shoe, Case No. 1:09-cv-11497.    On information and belief, the suit resulted in withdrawal of the Louis Vuitton Minstrel Shoe from the marketplace.    Similarly, among other remedies, Cascade demands that New Balance withdraw its TROJAN lacrosse helmet from the marketplace.

## COUNT I

### (False Designation of Origin – 15 U.S.C. § 1125(a))

43.    Cascade repeats and re-alleges the allegations contained in paragraphs 1 through 42 above as if fully set forth herein.

44. As described above, Cascade is the owner of the Cascade Trade Dress embodied in the Cascade CPX lacrosse helmet, the Cascade Pro-7 lacrosse helmet, and predecessor models.

45. The Cascade Trade Dress has acquired distinctiveness because it has come to be recognized as a source indicator by the consuming public, who exclusively associate that trade dress with Cascade as the source of the products sold thereunder. The primary significance of the Cascade Trade Dress is to indicate Cascade as the source.

46. The Cascade Trade Dress is not functional.

47. Cascade's ownership and use in commerce of the Cascade Trade Dress predates the use by New Balance and Warrior of their confusingly similar design.

48. Upon information and belief, given the fame of the Cascade Trade Dress, New Balance's and Warrior's conduct was undertaken in a willful and intentional attempt to misappropriate Cascade's goodwill.

49. New Balance and Warrior use the Cascade Trade Dress in interstate commerce in connection with offering for sale, selling, distributing, and advertising of their TROJAN helmet.

50. New Balance's and Warrior's unauthorized use in commerce of the Cascade Trade Dress on their TROJAN helmet as described above constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of New Balance and Warrior with Cascade and/or as to the origin, sponsorship, or approval by

Cascade of New Balance and Warrior's goods, and will irreparably harm Cascade and the goodwill it has developed in the Cascade Trade Dress.

51.    As a direct and proximate result of New Balance's and Warrior's violations of 15 U.S.C. § 1125(a), Cascade has been and will continue to be damaged irreparably.

52.    Upon information and belief, New Balance and Warrior will soon realize substantial profits and other benefits, rightfully belonging to Cascade as a result of their wrongful conduct.

53.    New Balance's and Warrior's conduct is causing and will continue to cause Cascade to suffer irreparable harm, and unless New Balance and Warrior are restrained, Cascade will continue to be so damaged, because it has no adequate remedy at law.

## COUNT II

### (Dilution – 15 U.S.C. § 1125(c))

54.    Cascade repeats and re-alleges the allegations contained in paragraphs 1 through 53 above as if fully set forth herein.

55.    As described above, Cascade owns valid and existing trade dress rights in the Cascade Trade Dress.

56.    Through consistent and continued use, product promotion, and consumer and industry recognition, the Cascade Trade Dress is famous in the field of lacrosse. New Balance and Warrior did not begin using the confusingly similar design in commerce in their TROJAN helmet until after Cascade's Trade Dress became famous.

57.    Upon information and belief, given the fame of the Cascade Trade Dress, the conduct of New Balance and Warrior is willful and intentional.    New Balance and

Warrior have adopted the Cascade Trade Dress in order to take advantage of the goodwill and reputation established in the Cascade Trade Dress.

58.    The design elements of New Balance's and Warrior's TROJAN helmet are virtually identical to the Cascade Trade Dress.

59.    New Balance's and Warrior's design of their TROJAN helmet is likely to cause dilution of the distinctive qualities of the Cascade Trade Dress in violation of 15 U.S.C. § 1125(c).

60.    As a direct and proximate result of New Balance's and Warrior's willful violations of 15 U.S.C. § 1125(c), Cascade has been and will continue to be damaged.

61.    Upon information and belief, New Balance and Warrior will soon realize substantial profits and other benefits rightfully belonging to Cascade as a result of their wrongful conduct.

62.    New Balance's and Warrior's conduct is causing and will continue to cause Cascade to suffer irreparable harm and, unless they are restrained, Cascade will continue to be so damaged, because it has no adequate remedy at law.

## COUNT III

### (Common Law Trademark Infringement)

63.    Cascade repeats and re-alleges the allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64.    Cascade is the owner of the famous Cascade Trade Dress embodied in the CPX lacrosse helmet, Pro-7 lacrosse helmet, and predecessor models.

65.    The Cascade Trade Dress is distinctive and serves as a source indicator for the consuming public, who exclusively associate the design with Cascade.    The primary

significance of the Cascade Trade Dress is to indicate Cascade as the source of the goods sold thereunder.

66.    The Cascade Trade Dress is not functional.

67.    Cascade's ownership and use in commerce of the Cascade Trade Dress predates the use by Defendants of their confusingly similar design.

68.    Upon information and belief, given the fame of the Cascade Trade Dress, Defendants' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Cascade Trade Dress.

69.    Defendants' use in commerce of a confusingly similar design in their TROJAN helmet, as described above, constitutes common law trademark infringement in that it is without Cascade's consent and creates a likelihood of confusion as to source.

70.    As a direct and proximate result of Defendants' common law trademark infringement, Cascade has been damaged and will continue to be damaged.

71.    Upon information and belief, Defendants will soon realize and will thereafter continue to realize substantial profits and other benefits rightfully belonging to Cascade as a result of their wrongful conduct.

72.    Defendants' conduct is causing and will continue to cause Cascade to suffer irreparable harm and, unless Defendants are restrained, Cascade will continue to be so damaged, because it has no adequate remedy at law.

## COUNT IV

### (Dilution – Mass. Gen. Laws ch. 110H §13)

73.    Cascade repeats and re-alleges the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

74.    As described above, Cascade is the owner of the famous Cascade Trade Dress embodied in the CPX lacrosse helmet, Pro-7 lacrosse helmet, and predecessor models.

75.    The Cascade Trade Dress is distinctive and serves as a source indicator for the consuming public, who exclusively associate the design with Cascade.    The primary significance of the Cascade Trade Dress is to indicate Cascade as the source of its goods.

76.    The Cascade Trade Dress is not functional.

77.    Upon information and belief, given the fame of the Cascade Trade Dress, Defendants' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Cascade Trade Dress.

78.    Defendants' use in commerce of the Cascade Trade Dress in their TROJAN helmet, as described above, constitutes dilution in that it is without Cascade's consent and creates and will continue to create a likelihood of injury to Cascade's business reputation and/or a likelihood of dilution of the distinctive quality of the Cascade Trade Dress.

79.    As a direct and proximate result of Defendants' dilution, Cascade has been damaged and will continue to be damaged.

80.    Upon information and belief, Defendants will soon realize, and will thereafter continue to realize, substantial profits and other benefits rightfully belonging to Cascade as a result of their wrongful conduct.

81.    Defendants' conduct is causing and will continue to cause Cascade to suffer irreparable harm and, unless Defendants are restrained, Cascade will continue to be so damaged, because it has no adequate remedy at law.

## COUNT V

### (Unfair Competition – Mass. Gen. Laws ch. 93A)

82.    Cascade repeats and re-alleges the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

83.    New Balance, Warrior and Cascade are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

84.    As described above, Cascade is the owner of the famous Cascade Trade Dress embodied in the CPX lacrosse helmet, Pro-7 lacrosse helmet, and predecessor models.

85.    The Cascade Trade Dress is distinctive and serves as a source indicator for the consuming public, who exclusively associate that trade dress with Cascade.    The primary significance of the Cascade Trade Dress is to indicate Cascade as the source.

86.    The Cascade Trade Dress is not functional.

87.    Upon information and belief, given the fame of the Cascade Trade Dress, Defendants' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Cascade Trade Dress.

88.    Defendants' use in commerce of the Cascade Trade Dress in their TROJAN helmet, as described above, predates Defendants' use of their confusingly similar design.

89.    Defendants' acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

90.    Defendants' acts, conduct, and practices described above, including without limitation the intended use of the Cascade Trade Dress in connection with the promotion, sale, or licensing of TROJAN helmets in Massachusetts, constitute unfair methods of

competition and/or unfair or deceptive acts or practices, which are unlawful under Mass.

Gen. Laws ch. 93A.

91.    As a direct and proximate result of Defendants' violations of Mass. Gen.

Laws ch. 93A, Cascade has been damaged and will continue to be damaged.

## PRAYERS FOR RELIEF

WHEREFORE, Cascade respectfully requests the following relief:

A.    That this Court declare that the Cascade Trade Dress is valid and

enforceable;

B.    That this Court permanently enjoin Defendants, their employees,

agents, servants, and all in privity with any of them or either of them,

from using the Cascade Trade Dress, or any derivative thereof or any

design similar thereto, in commerce;

C.    That this Court enter an order recalling all confusingly similar

products of Defendants presently manufactured and distributed, including

without limitation the TROJAN helmet;

D.    That this Court award Cascade Defendants' profits and/or

compensatory damages in an amount to be determined at trial;

E.    That this Court award Cascade treble damages;

F.    That this Court award Cascade its attorneys' fees and costs; and

G.    That this Court award Cascade such other and further relief as it deems

just and proper.

**<u>JURY DEMAND</u>**

Cascade demands a trial by jury of all claims so triable.

Respectfully submitted,

LANDO & ANASTASI, LLP

/s/ John L. Welch

_____

John L. Welch, BBO No. 522,040
LANDO & ANASTASI, LLP
One Main Street – 11th Floor
Cambridge, MA     02142
(617) 395-7000 – Phone
(617) 395-7070 – Facsimile
jwelch@ll-a.com – e-mail

Of Counsel:

H. Jay Spiegel
H. JAY SPIEGEL & ASSOCIATES
P.O. Box 11
Mount Vernon, VA     22121
(703) 619-0101 – Phone
(703) 619-0110 – Facsimile
jayspiegel@aol.com – e-mail

*Attorneys for Plaintiff*